

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 SEP 24  PM 12: 21

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

| | |
|---|---|
| *Tamera L. Fine*<br>*Assistant United States Attorney*<br>*Tamera.fine@usdoj.gov* | *Suite 400*<br>*36 S. Charles Street*<br>*Baltimore, MD 21201-3119*<br><br>*DIRECT: 410-209-4800*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-0716* |

June 11, 2015

James E. Crawford, Esquire
James E. Crawford & Associates, LLC
1435 Sulphur Spring Road
Baltimore, Maryland 21227

JUN 12'15 10:42AM

RE:  *United States v. Jason Carpenski*
    Crim. No. CCB-14-0461

Dear Mr. Crawford:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by June 30, 2015, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.    The Defendant agrees to plead guilty to Count One of the Indictment, which charges him with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a). The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

2.    The elements of Count One (Production of Child Pornography) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That on or about the date(s) specified in the Indictment, in the District of Maryland, the Defendant:

a.    Knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

b.    For the purpose of producing a visual depiction of such conduct;

c.    And the Defendant had reason to know that the materials used to produce the visual depictions were transported in interstate and foreign commerce.

<u>Penalties</u>

3.     The sentence provided by statute for Count One is not less than fifteen (15) years and not more than thirty (30) years of imprisonment, a $250,000 fine, and supervised release of at least five (5) years and not more than life.  In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013 per count of conviction, which will be due and should be paid at or before the time of sentencing.  This Court may also order the Defendant to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.  The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.  The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

4.     The defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

<u>Waiver of Rights</u>

5.     The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.     If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel.  That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to confront and cross-examine the government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

Count One – Production (Group One)

3

a. .    The base offense level for Count One is thirty-two (32) pursuant to U.S.S.G. §2G2.1(a).

b.    Pursuant to U.S.S.G. §2G2.1(b)(1)(A), there is a four (4) level increase because the victim in this case had not attained the age of 12 years at the time of the offense.

c.    Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact.

d.    Pursuant to U.S.S.B. §2G2.1(b)(3), there is a two (2) level increase because the offense involved distribution of the images to others.

e.    Pursuant to U.S.S.G. §2G2.1(b)(5), there is a two (2) level increase because the Defendant was a parent, relative, or legal guardian of the minor involved in the offense or the minor was otherwise in the custody, care, or supervisory control of the Defendant.

f.    Thus, the offense level for Count One/Group One is 42.

Relevant Conduct-Possession of Child Pornography (Group Two)

g.    The factual stipulation specifically establishes the commission of an additional offense (Receipt, Distribution and Possession of Child Pornography). Therefore, under U.S.S.G. §1B1.2(b) and (c), Application Note 5 to U.S.S.G. §2G2.1, and the Multiple Count Rules in Chapter Three, the guidelines for this offense must also be calculated.

h.    The base offense level is twenty-two (22) pursuant to U.S.S.G. §2G2.2(a)(2).

i.    Pursuant to U.S.S.G. §2G2.2(b)(2), there is a two (2) level increase because the victim in this case had not attained the age of 12 years at the time of the offense.

j.    Pursuant to U.S.S.G. §2G2.2(b)(3), there is a five (5) level increase because the offense involved distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain.

k.    Pursuant to U.S.S.B. §2G2.2(b)(6), there is a two (2) level increase because the offense involved use of a computer or an interactive computer service for the possession, transmission, receipt or distribution of the material.

l.    Pursuant to U.S.S.G. §2G2.2(b)(7)(D), there is a six (6) level increase because the offense involved at least 600 images, counting each video file as 75 images pursuant to Advisory Note 4(B)(ii) to U.S.S.G. §2G2.2.

m.    Thus, the offense level for Group Two is 37.

4

Combined Offense Level

n.      Pursuant to U.S.S.G. §3D1.2, Groups One and Two do not group because different victims are involved in the offense. Count One/Group One (Level 42) counts as one unit and one-half unit is added for Group Two (Level 37) as it is 5 to 8 levels less serious than Group One. As a result, one level is added to Group One (Level 42) resulting in an adjusted base offense level of **43.**

8.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

Accordingly, the final offense level is 40.

10.      The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

11.      This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

Obligations of the United States Attorney's Office

12.      At the time of sentencing, this Office will recommend a reasonable sentence which gives due consideration to the advisory U.S.S.G. range and the sentencing factors outlined at 18 U.S.C. § 3553(a). At the time of sentencing, the United States will move to dismiss any open counts against the Defendant in the Indictment.

13.      The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## 18 U.S.C. § 3553(a)

14.    This Office and the Defendant agree that both parties reserve the right to argue that this Court should sentence the Defendant to a variant sentence outside of the advisory guidelines range determined by the Court. This Office and the Defendant stipulate and agree that if either party intends to argue, pursuant to 18 U.S.C. § 3553(a), that the sentence in this case should fall outside of the advisory guidelines range based on any factor, that party will notify opposing counsel at least 14 days in advance of sentencing of the facts or issues the party intends to raise. If the party seeking the non-guideline sentence fails to provide timely notice of the intent to argue for a sentence outside the advisory guidelines range, that party will withdraw the 3553(a) arguments or consent to a continuance of the sentencing date.

## Waiver of Appeal

15.    In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

b.    The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence in imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), so long as that sentence is at or above the mandatory minimum sentence and at or below the statutory maximum sentence, as provided by 18 U.S.C. § 2251(e).

c.    Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

e.    The Defendant further waives any and all motions, defenses, probable cause determinations, objections which defendant could assert to the indictment or to the Court's entry of judgment against the Defendant, and any imposition of sentence upon the Defendant consistent with this agreement. If Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

6

### Obstruction or Other Violations of Law

16.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. §3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

17.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Forfeiture

18.     The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence on August 5, 2014, including, but not limited to, one LG cellular telephone, model D500. The Defendant further agrees to take whatever steps are necessary to pass clear title to that property to the United States.

<u>Restitution</u>

19.     For purposes of sentencing, the offense of conviction constitutes a crime of violence pursuant to 18 U.S.C. § 16.  Therefore, under 18 U.S.C. §§ 3663A, 2259, and 3771, any identified victim is entitled to mandatory restitution.  The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected.  18 U.S.C. §§ 2259, 3663A(b)(2) and (4).  The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation.  The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution.  If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.  Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea.  If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

<u>Entire Agreement</u>

20.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case.  The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By:     _____
Tamera L. Fine
Assistant United States Attorney

8

I have read this agreement or had it read to me, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_8--27- 15_
Date

X _Jason Carpenski_
Jason Carpenski

I am Jason Carpenski's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_8/27/15_
Date

_____
James E. Crawford, Esquire

9

## ATTACHMENT A-STATEMENT OF FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

1. During all times relevant to the Indictment, Jason Carpenski, was 28 years old and unemployed. He resided with his parents and two children in Baltimore, Maryland.

2. On July 28, 2014, an FBI Task Force Officer in the District of Columbia, acting as an undercover officer, posted an advertisement on an internet advertising site. Shortly thereafter, the officer received a response to the advertisement from Jason Carpenski ("Carpenski" and the "Defendant") and engaged in a chat with the Defendant, identified at that time by his email account, bmoremetal@gmail.com and his associated name "Yo Momma." Over the next two days, the Defendant had both on-line and telephone communication with the undercover officer in which he discussed his interest in images and activities involving sexual contact between adult males and their young, prepubescent daughters. He described having access to two prepubescent girls below the age of eight and described sexual contact he had with both of them, including touching their genitals and then masturbating to ejaculation. The Defendant then transmitted to the undercover officer an image titled CAM00313 which depicted a close up image of an adult male hand pulling aside a pink pair of panties and further spreading open the vaginal area of a prepubescent female. The Defendant communicated to the undercover officer that he had taken the photograph of one of the girls in his care.

3. On August 5, 2014, a federal search warrant was executed at the Defendant's residence when he was not present. He returned to the residence at his parent's request and agreed to an interview with agents. Carpenski explained that he responded to an advertisement on Craigslist which talked about Taboo subjects and further stated "I'm guessing that's why you are here." Carpenski admitted that he utilized his LG cell phone to access the Internet and communicate on-line. Carpenski provided his phone number and e-mail accounts which he stated he currently utilized or utilized in the recent past, including the email account he used for communication with the undercover officer. This and other email accounts used by the Defendant were linked to his LG D500 cellular telephone, which he had obtained on March 8, 2014.

4. Carpenski admitted he exchanged images with an individual on-line, including images of what Carpenski described as up-close images of the vagina of Victim One, a young female child (below the age of 12) under his care. Carpenski admitted that he may have touched Victim One inappropriately once, and that one night he took the image of Victim One's vagina while he thought she was asleep. Carpenski was shown several images including the image titled CAM00313. Carpenski admitted that he took the image of Victim One, identified the hand in the image as his hand, and that he sent the image with his LG cell phone via one of his e-mail accounts, bmoremetal@gmail.com. Carpenski denied having any sexual contact with or taking pornographic pictures of Victim Two (a second female child younger than the Victim One).

5.      A search warrant executed on bmoremetal@gmail.com revealed that Carpenski had emailed CAM00313 to multiple individuals in other states and countries. The email search warrant also revealed 158 still images and four video files depicting prepubescent children sexually explicit conduct. Some of these images had been emailed to others as well.

6.      Forensic review of Carpenski's LG D500 cellular telephone resulted in the recovery of multiple images, including CAM00313, depicting sexual acts (intentional touching, not through clothing, of the victim's genitalia) between Carpenski and Victim One. The forensic review identified March 9, 2014 as the date on which CAM00313 had been created; this was the day after Carpenski had obtained the LG D500 cellular telephone. The forensic review of the cell phone also revealed 375 still images depicting prepubescent children engaged in sexually explicit conduct (some images were duplicates of those contained in Carpenski's email account).

7.      Including images recovered from Carpenski's email account and his cell phone, there were over 500 separate images and four video filed which depicted prepubescent children engaged in sexually explicit conduct.

7.      The LG D500 cellular telephone was manufactured in China.

8.      At the time of the offense, Victim One was actually less than eight years of age and in the care and custody of Carpenski.

I have read this statement of facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I acknowledge that it is true and correct and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

8 - 27 - 15
_____
Date

_____
Jason Carpenski

I am Jason Carpenski's attorney. I have carefully reviewed every part of this Factual Stipulation with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

8/25/15
_____
Date

_____
James E. Crawford, Esquire

2